**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

Haley TUCKER,
      Plaintiff,                          No. 1:21-cv-00736-SCY-JFR

v.

UNIVERSITY OF NEW MEXICO
BOARD OF REGENTS;
UNIVERSITY OF NEW MEXICO SCHOOL OF LAW;
DEAN SERGIO PAREJA, in his official capacity,
      Defendants.

**PLAINTIFF'S RESPONSE IN OPPOSITION**
**TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT TO**
**RECOVER DAMAGES DUE TO DEPRIVATION OF CIVIL RIGHTS**

**COMES NOW** Plaintiff Haley Tucker, by and through her attorneys, New Mexico Legal

Aid, Inc. (Derek Garcia and Michelle Garcia) and responds to Defendants' Motion to Dismiss First

Amended Complaint to Recover Damages for Deprivation of Civil Rights. *See* ("Second Motion to

Dismiss") [Doc. 12, filed September 17, 2021].  For the reasons stated herein, the Court should

deny Defendants' Second Motion to Dismiss, in its entirety, and proceed forward to scheduling

conference, discovery, and resolution on the merits.

**FACTUAL BACKGROUND**

This case arises from events concluding on July 5, 2019, in which first-year law student

Haley Tucker was denied her ability to fully complete her legal education, due to pervasive,

flagrant, and repeated on-campus violations of a lawfully issued, and subsequently extended, Order

of Protection under the New Mexico Family Violence Protection Act.  Plaintiff's ex-husband was a

concurrently attending third-year law student, and violated the Order of Protection in ten discreet

acts and instances, specifically detailed in Plaintiff's First Amended Complaint to Recover

Damages for Deprivation of Civil Rights.  *See* ("First Amended Complaint,") [Doc. 11].  Plaintiff brought several claims under both State and federal law, due to Defendants' knowledge of the Order of Protection, Plaintiff's timely reports of violations to school administrators, and Defendants' willful indifference and/or negligence to enforce the Order of Protection on campus, or in meaningfully investigating, intervening, or initiating disciplinary action against Plaintiff's abuser and ex-husband.   Defendants' alleged actions and omissions led to the subsequent deprivation of Plaintiff's rights, property interests, education, happiness and safety, and sufferance of emotional distress, as alleged.  *See* First Amended Complaint, at ¶62.

Plaintiff incorporates by reference the allegations and Factual Background as stated in her First Amended Complaint, ¶6 – 73 [Doc. 11].

## STANDARD OF REVIEW

In reviewing a motion to dismiss, the Court must accept all well-pled allegations in the Complaint as true and view those allegations in the light most favorable to the nonmoving party. *See Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1149 (10th Cir.2001).  The Complaint should not be dismissed for failure to state a claim, "… unless it appears **beyond doubt** that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Benefield v. McDowall*, 241 F.3d 1267, 1270 (10th Cir.2001); *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir.1997) (**emphasis added**).

The Motion to Dismiss standard has been additionally clarified in *Bell Atlantic Corp. v. Twombly,* which now states that a claim for relief must be "plausible on its face."  *Id.* at 1247. 550 U.S. 544, 570 (2007).  "As the Court held in *Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929, the pleading standard Rule 8 announces **does not require 'detailed factual allegations**,'

2 of 24

but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Id.*, at 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986) (**emphasis added**). A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' 550 U.S., at 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929. Nor does a complaint suffice if it tenders, "… 'naked assertion[s],' devoid of 'further factual enhancement.' Id., at 557, 127 S. Ct. 1955, 167 L. Ed. 2d 929. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (U.S. 2009) '[D]etailed factual allegations' are not required, *Twombly*, 550 U.S., at 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929, 'but the Rule does call for sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,' id., at 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929. A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929." *Ashcroft*, 129 S. Ct.at 1940 (U.S. 2009).

In the context of a Rule 12(b)(6) Motion, a Complaint may be dismissed if it fails, "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). Dismissal under Rule 12(b)(6) "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Duran v. Carris*, 238 F.3d 1268, 1270 (10th Cir. 2001) (quotation and citation omitted). "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir.1994) (citation omitted) (emphasis added). Rule 12(b)(6) requires a legal rather than a factual analysis, and when considering and addressing a Rule 12(b)(6) motion, a court must accept as true all factual allegations pleaded in the complaint, view those allegations in the light most favorable to the plaintiff, and draw all

reasonable inferences in the plaintiff's favor. *See Smith v. United States*, 561 F.3d 1090, 1097 (10th Cir.2009). *Ashcroft*, published relatively shortly after *Twombly*, further clarified that a complaint that contains sufficiently "plausible" factual allegations is one that supports the reasonable inference that the facts alleged, and taken as true, support an actionable claim. *Ashcroft*, 129 S.Ct. at 1949 ("The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully").

In *Gee v. Pacheco*, the U.S. Tenth Circuit Court of Appeals very recently provided even further guidance for assessing a complaint's "plausibility" under Fed.R.Civ.P. 8(a)(2) and 12(b)(6). The *Gee* court's Rule 12(b)(6) analysis and references to *Twombly* and *Ashcroft* started with a reminder that plausibility test derives from the nature of conspiracy claims at issue in *Twombly*, specifically § 1 of the Sherman Act. *Gee*, at 2-3 (citation and quotations to *Twombly* omitted) (enough facts must be stated in order "to suggest that an agreement was made" which "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement..."). However, the plausibility standard, as applied to conspiracy claims alleging an agreement to commit illegal acts, requires no more than a "context implying a meeting of the minds." *Gee*, at 3. Notably, *Twombly* required plausible factual allegations to support the "context" in which an agreement could be explicitly or tacitly achieved, not allegations setting forth details of the actual agreement. *Id*. **Here, as in *Gee*, disciplinary actions or omissions by Defendants' which are unknown to Plaintiff personally, need not be guessed at or surmised, or pled in extreme factual detail (at this stage of discovery), in order to survive application of the facial plausibility standard.**

*Gee* succinctly described the reasons for *Twombly's* evolution when the U.S. Supreme Court then adopted its plausibility standard in *Ashcroft* and held that the same standard also applies

to prison civil rights complaints. *Gee*, at 3. *Gee* reminded courts, litigants, and attorneys that the pleading standards, and thus plausibility, must be read in the "context" of the specific Plaintiff's asserted claims:

> *Iqbal* establishes the importance of *context* to a plausibility determination. The allegations in [plaintiff] Iqbal's complaint had to be read in light of the events of September 11 [2001]. Nowhere in the law does context have greater relevance to the validity of a claim than prisoner civil-rights claims. Prisons are a unique environment, and the Supreme Court has repeatedly recognized that the role of the Constitution within their walls is quite limited. *Government conduct that would be unacceptable, even outrageous, in another setting may be acceptable, even necessary, in a prison. Consequently, a prisoner claim will often not be plausible unless it recites facts that might well be unnecessary in other contexts.*
> *Gee*, at 3 (emphasis added).

*Gee* acknowledged that *Iqbal* has received criticism for placing an unfair burden on plaintiffs without the benefit of discovery, but defended *Iqbal's* plausibility standard to the extent it is applied in the context of the prisons. "[P]risoners claiming constitutional violations by officers within the prison will rarely suffer from information asymmetry. Not only do prisoners ordinarily know what has happened to them; but they will have learned how the institution has defended the challenged conduct when they pursue the administrative claims that they must bring as a prerequisite to filing suit." *Gee*, at 5 (citations omitted). As such, the Tenth Circuit requires that the "plausibility" standard be applied in the specific context from which a suit arises and equitably consider the ability of the plaintiff to reasonably access the necessary factual allegations. Nevertheless, even in the prison context where plausibility must be strictly applied, the *Gee* court sustained one of the plaintiff's claims and acknowledged that even though the plaintiff's "allegations may be improbable, but they are not implausible. Accordingly, they state a claim for relief, and they should have been allowed to proceed beyond the pleading stage." *Gee*, at 8.

## **ARGUMENT**

### I.  **T**HE **C**OURT **S**HOULD **N**OT **D**ISMISS **C**OUNTS AGAINST UNMSOL

Defendants argue that University of New Mexico School of Law ("UNMSOL") is exempt from suit as a matter of law. Motion to Dismiss, at p. 4.  There is nothing found in NMSA 1978, § 21-7-4, specifically exempting specific schools and faculties from being named Defendants, nor requiring Plaintiff to *exclusively* name the Board of Regents alone as the only properly named corporate party, as a matter of law.  Nor is sovereign immunity specifically conferred upon either the Board of Regents of UNM, as immunity is specifically waived for Constitutional Torts in the New Mexico Tort Claims Act, and for any New Mexico Civil Rights Act, prospective and ongoing policy, custom, and practice claims.

Defendants acknowledge that the Board of Regents *may* be sued under NMSA 1978, § 21-7-4, but point to no case law, statutes, or controlling authority that the Board of Regents *must be exclusively* sued for all claims against specific departments, schools, individuals, faculties, or property within its care and concern.  By contrast, Plaintiff points to several cases in which other specific schools survived summary dismissal as named Defendants herein.  Given that the standard and discretion should err in favor of Plaintiff at this stage, absent clear authority cited by Defendants that the Board must be exclusively sued, denying Defendants' Motion to Dismiss as to Defendant UNMSOL is proper.  Defendant UNMSOL has not demonstrated, "… beyond a doubt," that it should be exempt from suit. *Conley,* 355 U.S. at 45-46 (1957).

Here, the law school is a properly named Defendant to this action, because it is the primary entity capable of providing the Plaintiff the specific relief requested, including installation of a Title IX coordinator, or Deputy Title IX coordinator in the law school, with independent authority to investigate and resolve Title IX complaints, and proactive, meaningful, and prominent

advertisement of remedies, options, and procedures available to law students who may have Title IX complaints.  Unless specifically ordered to, supervised by, or required to by the UNM Board of Regents, which does not typically supervise or micromanage law school affairs, there is some risk that complete and meaningful remedy may be avoided.

Second, Defendant UNMSOL must be maintained in this suit in order to respond to Plaintiff's forthcoming discovery requests.  Relevant and necessary documents maintained by UNMSOL would have to be obtained through the Board of Regents.  For the purposes of efficiency alone, UNMSOL should be maintained as a party, in order to most economically, competently, and thoroughly respond to Plaintiff's reasonable discovery requests.

By way of example, a healthy recognition for the independent discretion and policy-making procedure at the law school, is precisely why The University of Maryland School of Law was named, in addition to the Board of Regents, in the landmark case of *Pearson v. Murray*, which began the fight for the ability of African Americans to study law in hitherto white only schools, and on truly equal and meaningful terms.  The Maryland courts similarly struggled with the discretion and independence of particular faculties and subject-specific schools, within the ultimate authority and discretion of the Board of Regents: "The government of the University of Maryland, after said consolidation shall become effective, as hereinafter provided, shall be vested in the Board of Trustees provided for by Section 2 of said Act of 1916, Chapter 372, which Board shall thereafter be known as the Regents of the University of Maryland.' Acts 1920, ch. 480. It was further provided, however, that the board might, until they thought it expedient to order otherwise, permit any of the previously existing faculties of the University of Maryland to govern themselves in whole or in part, to appoint teachers, and provide for their compensation,  and for the expenses of

the department, out of any available funds, including the tuition fees from students." *Pearson v. Murray*, 169 Md. 478, 482, 182 A. 590 (1936).

The Law School was specifically recognized and discussed as an distinct entity, subject to the authority of the Board of Regents, but also an independent State agency: "The Law School of the University of Maryland being a state agency, or a part of one, is subject to the equal protection clause of the Fourteenth Amendment to the United States Constitution, and is consequently required to furnish equal facilities for legal training to white and colored [sic] students, unless such facilities are otherwise furnished by the State." *Pearson v. Murray*, 169 Md. 478, 480, 182 A. 590 (1936). Similarly, the 10th Circuit recognized the UNM School of Medicine, and not necessarily or exclusively the Board of Regents, as the proper named party in *McGuinness v. Univ. of N.M. Sch. of Med.*, 170 F.3d 974 (10th Cir. 1998) (ADA claims dismissed on alternate grounds). As such, the law school and medical school should be leaders, not followers, in establishing and enforcing Title IX policies and protections, and should not lag behind the remainder of main campus in achieving meaningful enforcement and education surrounding such protections. Arguably, the law school has a special obligation to set the standard for investigation, compliance, and meaningful access to equal and fair justice, instead of seeking to keep its name off of ongoing suits, seeking to enforce such fundamental rights on behalf of its students.

Here, because there is nothing cited in a plain reading of NMSA 1978, § 21-7-4 which shields UNMSOL, or its Directors and senior administrators, as semi-independent entity from the Board of Regents itself, and because discretion lies with the non-movant at motion to dismiss stage, UNMSOL is properly maintained as an additional corporate Defendant. Upon information and belief, UNMSOL maintains its independent decision-making authority over Plaintiff's pretextual suspension and disciplinary proceedings, and such decision-making was not passed through the

Board of Regents.   Additionally, should Plaintiff prevail in her goals of specific relief and institutional reforms, "a wrong without a remedy" problem may manifest if UNMSOL is not maintained in this suit.   Above all, Defendants can point to nothing explicit, as a matter of law, that shields UNMSOL from being separately named, and the Courts have routinely allowed for suit to continue for other schools and faculties in addition to the Board of Regents, including the UNM School of Medicine and other such semi-independently operated entities.

## II. DEFENDANTS' MOTION TO DISMISS COUNT I OF PLAINTIFF'S FIRST AMENDED COMPLAINT AGAINST UNMBOR AND DEAN PAREJA SHOULD BE DENIED

Defendants deceptively argue that Title IX does not create a cause of action against individuals, only institutions.   Second Motion to Dismiss, at p. 4, citing *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246 (2009).   A more genuine reciting of the holding in *Fitzgerald* is that Title IX claims may be brought in addition to, and concurrent with, 42 U.S.C. §1983, U.S. Const. amend. XIV claims, as is being done here in the instant case.   "Held: 1. Title IX does not preclude a § 1983 action alleging unconstitutional gender discrimination in schools. Pp. 4-12." *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 246 (2009) Title IX of Education Amendments of 1972 (20 U.S.C.S. § 1681 et seq.) held not to preclude 42 U.S.C.S. § 1983 suits alleging gender discrimination in schools in asserted violation of equal protection clause of Federal Constitution's Fourteenth Amendment. *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 246 (2009). Nowhere in the text of Fitzgerald appears the holding described by Defendants, and if such existed, it would have been cited, by pinpoint cite, to the Court.   Additionally, a plain reading of the text of 42 U.S.C. §1983 specifically requires individuals, not just institutions, to be named, but has been expanded in subsequent case law to authorize suit against institutions as well.   *Fitzgerald* does briefly describe, in passing, that the 11th Circuit limited Title IX claims as authorizing suit against

institutions only, and not individuals, but that was by no means the holding of the United States Supreme Court in this specific case. *Fitzgerald,* 555 U.S. at 257.  Similarly, a search of 10th Circuit cases, on this point, yielded no known controlling authority or holding on the specific holding cited by Defendants, falsely attributed to the U.S. Supreme Court.  Because no such controlling authority exists for what Defendants' describe, the Court should deny Defendants' Motion to Dismiss Count I of Plaintiff's First Amended Complaint against UNMBOR and Dean Pareja, with prejudice.

### III. THE COURT SHOULD NOT DISMISS COUNT I (TITLE IX DEPRIVATION OF EDUCATIONAL OPPORTUNITY DUE TO GENDER BASED DISCRIMINATION OR BIAS).

A careful reading of Plaintiff's First Amended Complaint demonstrates that she has adequately pled, with incorporated allegations, and facts taken as true, the elements required by *Steamboat Springs*, 511 F.3d at 1119.  *Compare* [Doc. 11] *with Rost v. Steamboat Springs RE-2 Sch. Dist.*, 511 F.3d 1114 (10th Cir. 2008).  To any extent the individual members of the Board of Regents did not have notice, constructive notice may be implied to them by virtue as the governing authority of UNM, but not exclusive Defendant, in a suit such as this.  All individual actors and named Defendants under the authority of UNMBOR had actual notice, and elected to proceed with deliberate indifference, in any case.  Defendants do not dispute that Defendant UNMBOR has control over UNMSOL and the individual actors named.  *See* Second Motion to Dismiss, at p. 6.

#### A. PLAINTIFF ALLEGES FACIALLY PLAUSIBLE CLAIM

Our Courts regularly and routinely recognize selective enforcement claims such as presented by the instant claim:

> "(b) Selective Enforcement:  'Title IX bars the imposition of university discipline where gender is a motivating factor in the decision to discipline.' *Yusuf*, 35 F.3d at 715. In selective enforcement cases, 'regardless of the student's guilt or innocence, the severity of the penalty and/or the decision to initiate the proceeding was affected by the student's gender.' *Id.* **'[A] plaintiff demonstrates selective enforcement through the identification of a comparator of**

**the opposite sex who was treated more favorably by the educational institution when facing similar disciplinary charges.'** *Doe v. Case W. Reserve Univ.*, 2015 U.S. Dist. LEXIS 123680, 2015 WL 5522001, at *6 (N.D. Ohio Sept. 16, 2015) (citing *Yusuf*, 35 F.3d at 716)."

*Flor v. Univ. of N.M.*, No. 1:20-cv-00027-JAP-LF, 2020 U.S. Dist. LEXIS 69597, at *36 (D.N.M. Apr. 20, 2020) (**emphasis added**).  In this case, unlike what was immediately available in *Flor,* a direct comparator of the opposite sex is available.  The jury may directly compare the treatment of Strandberg, with that of Tucker, and potentially conclude that he was treated more favorably than Tucker, making dismissal as a matter of law, on the grounds of facial implausibility, highly improper.  Suspension proceedings were initiated against Tucker (pretextually for lack of academic performance), whereas no known or apparent suspension or disciplinary proceedings were initiated against Mr. Strandberg (Ms. Tucker's factually adjudicated domestic abuser and stalker) after numerous reports of his violations of the Order of Protection to Defendants' employees were made.  Defendants took no known steps to control the behavior of Strandberg, until he battered another third-party and female law student and was arrested by APD, whereas Defendants provided Tucker multiple notices of academic suspension and suggestions that she quit law school, or take a leave of absence, as the remedy for escaping her former husband's abuse.  Even though the statistics she presents concerning the disparity of domestic violence perpetrated against female and LGBTQ+ students are true, in their own right, Plaintiff does not rest on these conclusory statistics alone.  Here, the jury will have a direct comparator of the opposite sex, Mr. Strandberg, to potentially conclude that Ms. Tucker has received disparate treatment and gender bias in an educational institution, and through its disciplinary proceedings. Because Tucker has pled both factually detailed and facially plausible claims, *in addition to* mere conclusory statements or general statistics, dismissal as a matter of law is unwarranted.

B. Plaintiff properly plead actual knowledge against unmbor; pervasive standard met

Defendants are attempting to have the best of both worlds, first by claiming that UNMSOL is not properly named as a Defendant, and then that the UNM Board of Regents (UNMBOR) lacked actual knowledge of the numerous detailed violations. *See* Motion to Dismiss, at 8. First, there are multiple bases of potential liability on the part of UNMBOR, for failing to accept and investigate Ms. Tucker's emailed and written request to initiate a Title IX Complaint through UNMBOR's Office of Equal Opportunity (OEO), to failing to provide an openly known and advertised Deputy Title IX coordinator at the School of Law, or easily accessible and written information on how to initiate complaint proceedings, to extension of its supervisory authority over UNMSOL's lack of disciplinary proceedings for Mr. Strandberg, and reasonable adjudication and thorough relief from Defendant UNMSOL (upon Plaintiff's written requests for reinstatement, institutional reform, and future safety guarantees).  Any one of these allegations, taken as true, would allow a reasonable jury to conclude the severe, pervasive, and objectively offensive sexual harassment required to support a Title IX claim, and therefore may not be dismissed at this stage.  *Compare Schaefer,* 716 F.Supp.2d at 1082:

> "On the other hand, the Court has difficulty finding this sexual harassment to be pervasive. Considering only the attack on AS, the Court finds that a single attack, by definition, cannot be pervasive. *See The American Heritage Dictionary of the English Language* at 1353 ("'pervasive . . . Having the quality or tendency to pervade or permeate."); id. ("pervade . . . To be present throughout; permeate"); id. at [*1083] 1349 ("permeate . . . To spread or flow throughout . . . ."). It occurs only once and at a single place in the school. Even considering all four alleged instances of student-on-student assault over the course of two months, the Court has difficulty finding the pervasiveness prong satisfied. That equates [**76] to approximately one attack every two weeks. Although the Court recognizes that, in the discrimination context, the Tenth Circuit has found that 'pervasiveness' is not solely based on the number of occurrences, the Court finds it unlikely that the Tenth Circuit would consider these four assaults, over two months, between different pairs of students, to be pervasive. *See Nieto v. Kapoor,* 268 F.3d 1208, 1219 n.8 (10th Cir. 2001)("[W]hile courts have tended to count events over time to determine pervasiveness, the word 'pervasive' is not a counting measure. The trier of fact

utilizes a broader contextual analysis.')(quoting *Smith v. Northwest Fin. Acceptance. Inc.,* 129 F.3d 1408, 1415 (10th Cir. 1997)))."

*Schaefer v. Las Cruces Pub. Sch. Dist.*, 716 F. Supp. 2d 1052, 1082-83 (D.N.M. 2010).

Here, unlike *Schaefer's* one (1) attack on AS*,* the ten (10) incidents, assaults, and attacks and violations[1] of the Order of Protection were committed by the same perpetrator against the same Plaintiff, of which Plaintiff pled actual knowledge, some made in writing and by email, to the Defendants' employees and material witnesses.  The attacks in *Schaefer* were committed between entirely different pairs of students.

The attacks here *did* occur in the law school's parking lot, and not somewhere off campus, and were timely reported to Defendants' employees, as clarified in Plaintiff's First Amended Complaint. *See* First Amended Complaint, ¶¶ 14 – 39 [Doc. 11]. Second, certain of the violations by email were made, by Strandberg, through the law school's student email accounts and servers, over which Defendant UNMSOL (and by extension UNMBOR) has actual knowledge and control. Simply put, none of the ten confirmed violations occurred outside of Defendants' knowledge, control, or remedial authority.  Student Health and Counseling (SHAC) is also an on-campus facility, and not someplace distant or removed off-campus as implied by Defendants.  Third, Mr. Strandberg, in the absence of any known intervention, by the law school, subsequently battered another female law student.  Foreknowledge of this highly dangerous person on campus is

---

[1] Defendants continue to mistakenly imply the Plaintiff somehow misnumbered the violations of the Order of Protection committed by Strandberg.  *See* Second Motion to Dismiss, p.7, fn. 2.  The terms of the Order of Protection prohibited Strandberg from both making contact with the Plaintiff, in addition to coming within 25 yards of her person.  Thus, Respondents in Domestic Violence cases are routinely found in violation of multiple violations, even though a Respondent's actions happen at the same time, date, or place.  One violation is for making contact, the other for coming within 25 yards of a protected party's person, and/or intentionally remaining in the physical space.

conclusively demonstrated through even a cursory examination of written correspondence and the Plaintiff's own verbal and emailed communications. While the 10th circuit has declined to attach a specific number of incidents to a Title IX claim, two incidents from the same known offender are enough to satisfy the pervasiveness standard, and allow a reasonable jury to conclude that Defendants may be held liable under Title IX. Lastly, not only did Plaintiff provide Defendant UNMSOL and its employees (and by extension Defendant UNMBOR) with written and emailed reports of certain violations, but also its Office of Equal Opportunity (OEO) failed or refused to initiate a complaint upon written notice, based on the erroneous conclusion that certain of the violations exclusively involved Ms. Tucker's children.

Such correspondence was in writing and will be available in Plaintiff's initial disclosures, and conclusively satisfying any "actual knowledge" requirement. For these reasons, actual notice on the part of UNMBOR and the subordinate employees under its authority was achieved.

Here, there are no facts to evaluate whether the law school took any behind-the-scenes action in Response to Plaintiff's Complaints, because no discovery has yet been conducted. Whether Plaintiff pleads, based on the available discovery, that the law school took no action of which Plaintiff was made aware (due perhaps to the law's school's obligation to protect Mr. Strandberg's own privacy interests), or that the law school took no action, whatsoever, is immaterial. At this stage of pleading, the Court must construe the facts in favor of Plaintiff, and conclude no reasonable action was taken on the part of Defendants in response to her reports of violations of the Order of Protection. Repeatedly suggesting that Plaintiff quit school, while it might be a form of action, is not reasonable action to preserve, protect, and defend Plaintiff's Constitutional and statutory rights.

C. PLAINTIFF MADE AN ADEQUATE STATEMENT OF TITLE IX DENIAL OF EQUAL PARTICIPATION IN SCHOOL RELATED ACTIVITIES DUE TO GENDER BIAS

Defendants argue, "There are no allegations that Plaintiff was treated differently than someone of the opposite gender than someone who was similarly situated to her."  Second Motion to Dismiss, at p. 11.  Plaintiff, as female identified, directly alleged that she was treated differently than her former husband,  who identifies as male.  [Doc. 11].  Strandberg did not receive notice of academic suspension from the law school after he complained about the stress his abuser was causing him, resulting in an inability to focus, study, and meaningfully participate in school related activities.  Unlike Plaintiff, Strandberg was not actually suspended from the law school, until after he assaulted another female law student and was arrested. A plain reading of the First Amended Complaint reveals that Plaintiff properly pled that she was denied Equal Protection or equal participation in schooling, education, and school activities because she was female.  As stated more thoroughly *supra*, here the fact-finder is presented with a direct comparator, and male law student and factually-litigated domestic abuser, by which the jury may conclude if disparate treatment and bias were manifest.  There is no requirement of intentional *mens rea* on intentional bias on the part of Defendants, only that disparate treatment was present and resulted in a deprivation of rights.  Because sufficient facts have been alleged in a facial reading of the First Amended Complaint, adopted as true, the Motion to Dismiss is properly denied.

IV. **THE COURT SHOULD NOT DISMISS COUNTS II, IV, AND V, AND CLAIMS BROUGHT UNDER 42 USC §1983, AND NOT DUE TO ANY TECHNICAL DEFICIENCIES IN PLEADING FOR WHERE JUSTICE SO REQUIRES GRANTING THE ABILITY TO FREELY AMEND**

The Complaint was amended for Defendant Pareja to be sued in his individual and official capacities, since he exchanged direct communications with the Plaintiff, had direct notice and actual knowledge of Strandberg's repeated and flagrant violations, and still failed or refused to

take investigative or remedial action.  Plaintiff pled sufficient factual detail concerning this correspondence in her First Amended Complaint to survive the plausibility standard at this stage in discovery, while still reserving the ability of Defendant's to plead under the summary judgment standard once discovery has commenced or been completed.

Additionally, individual actions and omissions committed by employee Huffstutler may be lawfully inferred to Defendant Dean Pareja via principles of *respondeat superior*, in both his individual and official capacity, for the purposes of satisfying a plain reading of 42 U.S.C. §1983. A plain reading of the statute requires a deprivation of Constitutional rights by "a person" acting in the scope of his State employment or color of law, regardless of the individual or official capacity distinction.  Such "persons" may deprive rights of citizens both in their individual and official capacities.  Dean Pareja violated Plaintiff's rights in his official capacity when he denied Plaintiff's First Petition for relief from academic suspension.  Defendant Pareja violated Plaintiff's rights in his individual capacity when he ignored Plaintiff's communications concerning multiple and flagrant violations of the Order for Protection without reasonable disciplinary action or investigation. *See* [(Doc. 11), ¶¶66 – 69]. Defendants UNMSOL and UNMBOR both maintained a custom, practice, policy or procedure of inadequate Title IX compliance safeguards and widespread knowledge procedures for protecting affected students who allege domestic violence on campus.  Defendant UNMBOR also ignored and denied initiation of two Title IX complaint emails personally made by the Plaintiff, and did not exercise oversight, control, or review of whether jurisdiction was properly denied. *Id, ¶¶*50 – 52.  Taken as true, FRCP 8 does not require more specific factual pleading at this stage.

### V. THE COURT SHOULD DENY DEFENDANTS' MOTION TO DISMISS COUNTS II, III, AND IV OF THE FIRST AMENDED COMPLAINT, BECAUSE INDIVIDUAL CAPACITY CLAIMS ARE

PRECISELY REQUIRED BY A PLAIN READING OF **42 U.S.C. §1983.**

Both individual and official capacity claims are permitted under §1983. "The Equal Protection Clause reaches only state actors, but § 1983 equal protection claims may be brought against individuals as well as [***594] municipalities and certain other state entities. *West v. Atkins*, 487 U.S. 42, 48-51, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988)." *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257 (2009). Taken as true, FRCP 8 does not require more specific factual pleading at this stage. Plaintiff has pled, with plausible and sufficient factual detail, cognizable claims at this stage. [Doc. 11]. To any extent that the Court requires more factual or specific detail, Plaintiff requests the ability to freely amend the Complaint, in the interests of justice, and to cure any technical deficiencies, as dismissal is the absolute harshest remedy.

**VI.** **THE COURT SHOULD NOT DISMISS PLAINTIFF'S CLAIMS BROUGHT UNDER THE NEW MEXICO CONSTITUTION BECAUSE THE NEW MEXICO TORT CLAIMS ACT WAIVES SOVEREIGN IMMUNITY FOR DIRECT CONSTITUTIONAL CLAIMS**

The New Mexico Tort Claims Act specifically waives immunity and provides for both the duty to defend and pay judgments against employees against individual school employees, including Dean Pareja, for both official and individual capacity claims, such that:

"D. A governmental entity shall pay any settlement or any final judgment entered against a public employee for:
(1) any tort that was committed by the public employee while acting within the scope of his duty; or
(2) a violation of property rights or any rights, privileges or immunities secured by the constitution and laws of the United States **or the constitution and laws of New Mexico** that occurred while the public employee was acting within the scope of his duty."

NMSA § 41-4-4 (LexisNexis, Lexis Advance through all 2021 regular and special sessions) (**emphasis added**).

Additionally, Defendant UNMSOL is not specifically excluded in the waiver of immunity:

"J. For purposes of this section, a 'jointly operated public school, community center or athletic facility' includes a school, school yard, school ground, school building, gymnasium, athletic field, building, community center or sports complex that is owned or leased by a governmental entity and operated or used jointly or in conjunction with another governmental entity for operations, events or programs that include sports or athletic events

or activities, child-care or youth programs, after-school or before-school activities or summer or vacation programs at the facility."

NMSA § 41-4-4 (LexisNexis, Lexis Advance through all 2021 regular and special sessions).

Defendant Pareja, as Dean of the law school, is the ultimate authority and law enforcement officer and public employee in matters of student discipline, suspension, and enforcement of the Student Handbook, Honor Code, and/or Code of Conduct, which specifically prohibits sexual harassment, assault, and other antisocial conduct by students.  The waiver of immunity, therefore, applies to him as law enforcement officer, as he is specifically vested with the power to maintain order between students. This section specifically waives Constitutional torts, in addition to those specifically enumerated:

"The immunity granted pursuant to Subsection A of Section 41-4-4 NMSA 1978 does not apply to liability for personal injury, bodily injury, wrongful death or property damage resulting from assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, defamation of character, violation of property rights, the independent tort of negligent spoliation of evidence or the independent tort of intentional spoliation of evidence, failure to comply with duties established pursuant to statute or law or **any other deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico** when caused by law enforcement officers while acting within the scope of their duties. For purposes of this section, "law enforcement officer" **means a public officer or employee vested by law with the power to maintain order**, to make arrests for crime or to detain persons suspected of or convicted of committing a crime, whether that duty extends to all crimes or is limited to specific crimes."

NMSA § 41-4-12 (LexisNexis, Lexis Advance through all 2021 regular and special sessions) (**emphasis added**).  If the Dean of the law school is not vested with any power to maintain order and ensure Equal Protection and application of the laws within the halls of the law school, then Defendants should point to the correct law enforcement officer, public employee, or public official who is vested with such power, and Plaintiff requests leave to freely amend.  Similarly, Defendant UNMBOR took no action through its UNM police department to arrest or control the actions of Strandberg, while on campus, thereby denying Plaintiff Equal Protection of the laws.  Because of

these omissions, all Defendants, as currently named, are subject to suit for the Constitutional torts detailed in her Complaint falling under both the New Mexico and United States Constitution, notwithstanding U.S. Const amend XII.  If sovereign immunity applies to Plaintiff's U.S. Const. amend XIV claims, then such immunity has been specifically waived by the New Mexico Tort Claims Act.  Sovereign immunity for direct New Mexico Constitutional claims are similarly waived.  Public schools are routinely sued for denial of equal protection claims under both federal and state law, and through exercising the Court's supplemental and concurrent jurisdiction to hear both sets of claims. *See* 28 U.S.C. Sec. 1343, *Martinez v. California*, 444 U.S. 277, 283 n.7 (1980)).  To any extent that Plaintiff should plead her claims as belonging under the NMTCA as Constitutional Torts with such liability caps implemented, as opposed to direct Constitutional claims, justice so requires the ability of Plaintiff to freely Amend her Complaint to cure any technical deficiencies in pleading.  In any event, Plaintiff's claims arising under the New Mexico Constitution have facial plausibility, at this early stage in the proceedings, absent clear and unambiguous authority otherwise.

**VII.**    **THE COURT SHOULD NOT DISMISS CLAIMS FOR SUBSTANTIVE AND PROCEDURAL DUE PROCESS VIOLATIONS ARISING UNDER U.S. CONST. AMEND XIV, AS THE CLERY ACT IS MENTIONED IN REFERENCE AS EXAMPLES OF DENIAL OF PROCEDURAL DUE PROCESS, BUT DOES NOT EXCLUDE DIRECT CONSTITUTIONAL CLAIMS THAT PLAINTIFF WAS DENIED DUE PROCESS**

It has been long established that the ability to pursue one's education and a calling or career, as an attorney or otherwise, implicates both substantive Due Process property interests and procedural Due Process protections, regardless of the Clery Act not providing for a direct cause of action:

"Procedural due process is only available to plaintiffs that establish the existence of a recognized property or liberty interest. See *Setliff v. Mem'l Hosp.*, 850 F.2d 1384, 1394 (10th Cir. 1988) (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 569, 33 L. Ed. 2d 548, 92 S. Ct. 2701 (1972)). The Supreme Court has held that a license to practice one's calling or profession is a [*1150] protected property right. *See Bell v. Burson*, 402 U.S. 535, 539, 29 L. Ed. 2d 90, 91

S. Ct. 1586 (1971). In *Bell*, the Court held that a traveling minister's license to drive automobiles could not be suspended without procedural due process.”

*Stidham v. Peace Officer Standards & Training*, 265 F.3d 1144, 1149-50 (10th Cir. 2001).

“Appellant also asserts that he has stated a claim that Defendants deprived him of two related liberty interests. **The first--his right to enjoy employment opportunities in his chosen field-- has [\*\*16] been repeatedly upheld in the courts.** In *Schware v. Board of Bar Examiners*, 353 U.S. 232, 238-39, 1 L. Ed. 2d 796, 77 S. Ct. 752 (1957), the Supreme Court held: "A State cannot exclude a person from the practice of [any] occupation in a manner or for reasons that contravene the Due Process or Equal Protection Clause of the Fourteenth Amendment." This court has similarly held: ‘The liberty interest that due process protects includes the individual's freedom to earn a living.’ *Lentsch v. Marshall*, 741 F.2d 301, 303 (10th Cir. 1984).”

*Stidham*, 265 F.3d at 1153 (**emphasis added**).

Similar to eventual career choice, a right to a public education finds indisputable procedural and substantive Due Process protection:

“The Plaintiff here argues that she has a constitutional right to due process before she can be deprived of her property interest in her continued enrollment and graduate education, and this argument appears to be well supported by Tenth Circuit precedent. In *Goss v. Lopez*, the Supreme Court held that, once provided, public education [\*18] becomes ‘a property interest which may be protected by the Due Process Clause.’ The Tenth Circuit extended and expanded this right in *Gaspar v. Bruton*, where the court found that ‘in light of *Goss* . . . where the Supreme Court recognized a property right in public school students, that certainly such a right must be recognized to have vested [where a student] paid a specific, separate fee for enrollment and attendance at [a technical] school.’ Tenth Circuit decisions since then have continued this trajectory and expanded it to a more generalized property interest in continuing graduate education, with a concomitant procedural due process right. **In light of these decisions, the Court concludes that the Tenth Circuit recognizes a constitutional right to due process before a student can be deprived of her property interest in her continued enrollment and graduate education**.”

*Lee v. Kan. State Univ.*, No. 12-cv-2638-JAR-DJW, 2013 U.S. Dist. LEXIS 80592, at \*17-18 (D. Kan. June 7, 2013) (**emphasis added**); *See also Harris v. Blake*, 798 F.2d at 422; *White v. Pauly*, 137 S. Ct. at 552 (quoting *Anderson v. Creighton*, 483 U.S. at 640); and *Lee v. Univ. of N.M.*, 449 F. Supp. 3d 1071, 1137 (D.N.M. 2020) (holdings against dismissal of Due Process claims, and

holding that Title IX Plaintiffs and students are entitled to due process protection before UNM can expel them **as clearly established law**) (**emphasis added**).

Here, Defendants argue that, "… to the extent any allegations of Count V or in the Complaint generally could be construed as asserting a claim for purported violations of the Clery Act, those claims are properly dismissed." Second Motion to Dismiss, at p. 24.   Count V mentions comparisons to the Clery Act as only an example of what reasonable Procedural Due Process Protection looks like, and recognizes that a private cause of action is not built into the Act itself. However, Count V is not a Clery Act claim, but one brought under U.S. Const. amend XIV and 42 U.S.C. §1983, and Procedural Due Process protections in this area, and established caselaw *supra,* make it indisputable that direct claims are properly pled.  It is to be determined by a jury or fact-finder whether reasonable Due Process protections were met in this specific case. Before Plaintiff's fundamental rights as a family justice scholar and the right to pursue her chosen career as an attorney were limited, abridged, and denied by the State institution, and before her past expended tuition and property were permanently seized, Procedural Due Process required fair notice and opportunity to be heard concerning Plaintiff's Title IX Complaint, which was denied by Defendant UNMBOR OEO office.  It is reasonable to suggest that timely and just adjudication of her complaints of sexual harassment and violence perpetrated by her stalker and abuser, similarly requires, at the very least, formal and timely disciplinary proceedings brought against her abuser, and to ensure the campus remains reasonably safe during such proceedings, both for Plaintiff, and for other similarly situated students.

The Defendants cannot plausibly argue that a direct Procedural Due Process claim is unavailable *as a matter of law*. For a cause of action to be maintained, for Count V, a Plaintiff must show, "A successful procedural due process claim requires a plaintiff to show '… (1) the

deprivation of a liberty or property interest and (2) the absence of due process. *Stears v. Sheridan Cnty. Mem'l Hosp. Bd. of Trs.,* 491 F.3d 1160, 1162 (10th Cir. 2007). Protected property interests require 'a legitimate claim of entitlement,' created not by the Constitution but by independent sources such as statute, municipal ordinance, or contract. *Nichols v. Bd. of County Comm'rs*, 506 F.3d 962, 969-70 (10th Cir. 2007) (quotation omitted)." *Mecca v. United States*, 389 Fed. Appx. 775, 781 (10th Cir. 2010). Plaintiff's past tuition was not only deemed non-refundable by Defendants, but her future completion of a law degree was also denied, due to a refusal to provide a future guarantee to keep her safe on campus, thereby breaching her initial contract (student handbook) and/or Plaintiff's property interests with the law school. For this reason, and because Plaintiff has more than met the requirements of a Procedural and Substantive Due Process denial claim under *Mecca* and the Short and Plain Fed. R. Civ. Pro 8 standard, dismissal of Count V is properly denied.

## VIII.   THE COURT SHOULD NOT DISMISS CLAIMS BROUGHT UNDER THE NEW MEXICO CIVIL RIGHTS ACT

It was conceded that N.M. Stat. Ann. § 41-4A-12 serves as a bar to retroactive application of this claim for individual acts and omissions occurring prior to July 1, 2021, and therefore Count VI of Plaintiff's Complaint was amended to state a claim for ongoing harms and continued seizure of Plaintiff's property in the form of tuition. Defendants argue that Plaintiff does not have standing to pursue a claim brought under this new law, as she is not a current student at the law school. Second Motion to Dismiss, p. 26. The retroactive bar does not apply to current and ongoing harms, including policy, practice, custom and procedure claims. These ongoing harms are exemplified and currently experienced by similarly-situated law students, in addition to Plaintiff herself, all of whom currently lack the ability to meaningfully enforce their Title IX rights while on campus, and

who currently lack access to an embedded and designated Title IX coordinator within UNMSOL, or printed, written and *openly advertised* information on the rights, responsibilities, and options available to those who are experiencing domestic violence, dating violence, and stalking on campus, including reasonable and understandable process and procedure, with a reasonable possibility of coordinated investigation, disciplinary process, and enforcement, when alleged violations occur.  *See* Complaint, Requests for Specific Relief [Doc. 1-1].

Additionally, Plaintiff maintains standing to continue suit under the New Mexico Civil Rights Act, because Defendants' refuse to return her tuition, despite their alleged breach of contract in failing to provide her with a safe, appropriate, and reasonable legal education.  They do not claim to be holding Plaintiff's tuition in an interest-bearing account.  Because Defendants' continue to seize Plaintiff's property without Due Process of law, she maintains standing and the ability to bring a cause of action under this specific law under the *Spokeo* standards. 578 U.S. 330.

UNMSOL is also geographically unique in the United States for providing education in indigenous peoples' and Indian law, an area of keen study and interest of Plaintiff's, and the intersectionality with work in the domestic violence arena, as a family justice scholar.  Because Plaintiff may never again safely return to UNMSOL without the specific forms of relief enacted, detailed in Plaintiff's First Amended Complaint, she has a permanently "lost chance" at a unique education, that may not easily be replicated in any other law school in the country.  Because replacement education is not easily available, Plaintiff continues to be harmed even after the incidents arising to her coerced departure.

Because there is no retroactive bar for ongoing policy, custom, and practice claims and the harms continuing to be experienced by Plaintiff and her community, Plaintiff successfully amended her Complaint to include a New Mexico Civil Rights Act Claim for ongoing harms, procedure,

policy, custom and process claims. Additionally, because Plaintiff's property and tuition continues to be wrongfully withheld without Due Process, Plaintiff continues to suffer an injury-in-fact, in addition to past harms, and therefore denial of Defendants' Motion to Dismiss  is warranted.

## CONCLUSION

For the reasons discussed herein, the Court should deny Defendants' Motion to Dismiss Plaintiff's First Amended Complaint for all Defendants, in its entirety.  Defendants have not demonstrated that they are entitled to dismissal of Plaintiff's facially plausible claims, as a matter of law, and beyond a doubt.  To any extent the Court has identified any remaining technical deficiencies in pleading, Plaintiff requests leave to file a Second Amended Complaint to cure such deficiencies, and otherwise avoid the harsh remedy of dismissal. Plaintiff prays for any additional and further relief as deemed just and proper by this Court.

**Respectfully Submitted,**

*/s/ Derek V. Garcia CAID #10/154*
DEREK V. GARCIA
MICHELLE GARCIA

NEW MEXICO LEGAL AID, INC.
Safe2BU! – New Mexico LGBTQ+ Legal Access Project
New Mexico Legal Aid, Inc.
P.O. Box 25486
Albuquerque, NM  87125
(505) 243-7871
derekg@nmlegalaid.org
michelleg@nmlegalaid.org
**Attorneys for Plaintiff**

## CERTIFICATE OF SERVICE

I hereby certify that I served the above pleading on all parties by electronically filing it with the CM/ECF system on this 1st day of October, 2021. */s/ Derek V. Garcia*