# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

_____

HALEY TUCKER,

     Plaintiff,

v.                                      Case No. 1:21-cv-00736-SCY-JFR

UNIVERSITY OF NEW MEXICO BOARD
OF REGENTS, in their individual and official capacities,
UNIVERSITY OF NEW MEXICO SCHOOL OF LAW,
and DEAN SERGIO PAREJA, in his individual and
official capacity,

     Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS[1]

Plaintiff Haley Tucker, when she was a first-year law student at the University of New

Mexico ("UNM"), had an Order of Protection based on domestic violence by her ex-husband,

who was at the time a third-year law student at the same school. She alleges that she provided a

copy of the Order of Protection to UNM before she began the school year in Fall 2017. However,

she alleges her ex-husband repeatedly violated the Order of Protection, and the school failed to

take any action to protect her, telling her instead that she should withdraw from the university.

Eventually, UNM suspended Plaintiff due to her academic performance. Plaintiff claims these

actions denied her equal educational opportunities on the basis of sex.

Defendants move to dismiss, arguing that Plaintiff does not allege violations of Title IX

or the federal constitution because the complaint does not allege severe or pervasive harassment

of which Defendants had actual notice. Defendants' narrow focus on three incidents between

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all
proceedings and to enter an order of judgment. Docs. 4, 7, 8.

Plaintiff and her ex-husband does not account for all the allegations in the complaint. The Court therefore denies part of the motion. However, the Court agrees with Defendants that the complaint brings certain claims against certain defendants that are not viable. Accordingly, the Court GRANTS IN PART AND DENIES IN PART the Motion as described herein.

## BACKGROUND

On July 26, 2017, Plaintiff received an Order of Protection from the Valencia County District Court against Joel Strandberg, her former husband and the father of her children. First Amended Complaint, Doc. 11 ("Compl.") ¶ 6. This order was based on factual findings that Strandberg had engaged in domestic abuse. *Id.* ¶ 7. The Order of Protection forbids Strandberg from contacting Plaintiff in any way or approaching within 25 yards of her. *Id.* ¶ 6.

Plaintiff began her first year at the University of New Mexico School of Law in 2017, when Strandberg was also a student there. *Id.* ¶ 8. She alerted Associate Director of Student Affairs Nancy Huffstutler to the Order of Protection, and Plaintiff and Ms. Huffstutler met before Plaintiff began her academic year. *Id.* ¶¶ 10-11. Ms. Huffstutler advised a "wait and see" approach rather than a proactive plan to avoid potential violations. *Id.* ¶ 12. Over the course of the school year, the following violations took place:

| Date | Description |
| --- | --- |
| August 22, 2017 (Violation #1) | Strandberg comes within 25 yards of Plaintiff (¶ 14) |
| August 22, 2017 (Violation #2) | Strandberg says "I love you" in American Sign Language to Plaintiff (¶ 14) |
| September 9, 2017 (Violation #3) | Strandberg follows Plaintiff through the UNM common area in violation of the 25-yard distance provision (¶ 17) |
| October 4, 2017 (Violation #4) | Strandberg texts Plaintiff's minor child and emails Plaintiff (¶ 19) |
| November 24, 2017 (Violation #5) | Strandberg texts Plaintiff's minor child (¶ 21) |

2

| December 1, 2017 (Violation #6) | Strandberg emails Plaintiff using his UNMSOL email account (¶ 23) |
|---|---|
| December 8, 2017 (Violation #7) | Strandberg stood in the waiting room of the student counseling center on campus as Plaintiff exited an appointment (¶ 27) |
| December 11, 2017 (Violation #8) | Strandberg enters the school dining area where Plaintiff is present (¶ 30) |
| April 9, 2018 (Violation #9) | Strandberg approaches Plaintiff in the school parking lot (¶ 37) |
| April 9, 2018 (Violation #10) | Strandberg angrily mouths words at Plaintiff as she drives away from the parking lot (¶ 38) |

Plaintiff reported these violations (¶¶ 16, 18, 20, 39, 81), and in response school officials proposed that she drop out or defer her education. *Id.* ¶¶ 33, 41, 49. The complaint alleges that "[t]he violations continued throughout the entirety of the school year with Defendants responding by taking no action to protect Plaintiff Tucker" (¶ 32) and that "[t]hroughout her entire ordeal, Plaintiff Tucker exchanged personal correspondence with Defendant Dean Pareja, detailing certain alleged violations and Defendant UNMSOL's reaction and lack of action to Plaintiff's concerns" (¶ 69). Plaintiff further asserts "Defendant Dean Pareja has and had actual knowledge of the sexual harassment, stalking, violence, and multiple violations of an Order of Protection committed by Strandberg, leading to Plaintiff's denial of publicly funded and supported educational benefits and opportunities." *Id.* ¶ 81. The complaint also alleges that Plaintiff notified Ms. Huffstutler of two April 9, 2018 violations (¶¶ 39-41) and that Plaintiff filed two Title IX complaints, but both were denied. *Id.* ¶¶ 50-52.

Plaintiff's academic performance suffered as a result of the repeated violations, and after she failed a class, she was placed on academic suspension in July 2018. *Id.* ¶¶ 20, 33, 58-59. Her efforts to obtain relief from suspension and to appeal the order of suspension were denied. *Id.* ¶¶ 60, 65-67, 70-71. The university offered to reinstate her for the 2019-20 school year, but she declined based on safety concerns and a lack of tuition reimbursement. *Id.* ¶ 72.

Plaintiff filed suit, bringing six counts against the University of New Mexico Board of

Regents ("UNMBOR"), the University of New Mexico School of Law ("UNMSOL"), and Dean

Sergio Pareja:

> **Count I**: Title IX violations
> **Count II**: 42 U.S.C. § 1983 violations based on Equal Protection Clause of Fourteenth
> Amendment to United States Constitution
> **Count III**: New Mexico Tort Claims Act violations based on Equal Protection Clause of
> New Mexico Constitution (Art. II Sec. 18)
> **Count IV**: 42 U.S.C. § 1983 and New Mexico Tort Claims Act violations based on First
> Amendment to United States Constitution and Art. II Sec. 4 and 17 of New Mexico
> Constitution (Retaliation for Expression of Speech)
> **Count V**: 42 U.S.C. § 1983 violations based on Procedural and Substantive Due Process
> Clause of Fourteenth Amendment to United States Constitution and Clery Act Violations
> (20 U.S.C. § 1092 et seq.)
> **Count VI**: New Mexico Civil Rights Act violations, solely against UNMBOR and
> UNMSOL.

Defendants filed their Motion to Dismiss First Amended Complaint to Recover Damages

Due to Deprivation of Civil Rights ("Motion") on September 17, 2021. Doc. 12.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint for failure

to state a claim upon which the court can grant relief. "[T]o withstand a Rule 12(b)(6) motion to

dismiss, a complaint must contain enough allegations of fact, taken as true, to state a claim to

relief that is plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir.

2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a complaint does

not require detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, it "requires

more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

will not do." *Twombly*, 550 U.S. at 555.

"A claim is facially plausible when the allegations give rise to a reasonable inference that

the defendant is liable." *Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016). The court's

consideration, therefore, is limited to determining whether the complaint states a legally

sufficient claim upon which the court can grant relief. *See Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). The court is not required to accept conclusions of law or the asserted application of law to the alleged facts. *See Hackford v. Babbitt*, 14 F.3d 1457, 1465 (10th Cir. 1994). Nor is the court required to accept as true legal conclusions that are masquerading as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court must, however, view a plaintiff's allegations in the light most favorable to him. *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013).

## DISCUSSION

The Court begins its analysis with the low hanging fruit. First is the question of whether UNMSOL is a valid party to the suit; the Court finds that it is not and therefore grants dismissal. Second is the question of whether the UNMBOR in its official capacity and Dean Pareja in his official capacity are redundant defendants; the Court finds that they are and therefore dismisses Dean Pareja in his official capacity. Third is the question of whether the New Mexico Civil Rights Act ("NMCRA") functions retroactively when the harm is ongoing; the Court finds that it does not and grants dismissal. Fourth is the question of whether the New Mexico Tort Claims Act ("TCA") waives sovereign immunity for Plaintiff to sue any of the defendants based on the New Mexico constitution; the Court finds that it does not and therefore dismisses all claims relying on the New Mexico constitution. These issues dispose of all matters except for the claims under 42 U.S.C. § 1983 ("Section 1983") and Title IX.

With those more straightforward questions addressed, the Court looks to the Title IX claim in Count I. First, the Court examines whether Title IX claims are valid against individuals; because they are not, the Court dismisses the individual capacity claims against members of the University of New Mexico Board of Regents and Dean Pareja. Next, the Court considers whether the complaint states a claim under Title IX against the official-capacity defendant (the

UNMBOR), and the Court finds that it does. Therefore, the Title IX claim survives against the UNMBOR in its official capacity.

Finally, the Court moves to the Section 1983 matters. First is whether Plaintiff may file a Section 1983 suit against the UNMBOR in its official capacity; the Court finds that since the UNMBOR is an arm of the state, she may not. Second is whether the individual capacity Section 1983 claims state a claim upon which relief can be granted—and here, the results splinter. Plaintiff fails to state a claim against the UNMBOR members in their individual capacities in any of her Section 1983 counts, and she fails to state a claim against Dean Pareja in his individual capacity under the Due Process Clause. But she successfully pleads facts sufficient to state a claim against Dean Pareja in his individual capacity under the Equal Protection Clause and the First Amendment's free speech protections.[2]

## I.      Validity of Suit Against UNMSOL

Defendants argue that UNMSOL is not a proper party to the lawsuit because it is not a suable entity. The UNMBOR is the relevant suable entity and thus the proper party pursuant to its statutory authority under NMSA § 21-7-4. Doc. 12 at 4. Plaintiff responds that, while this statute allows the UNMBOR to sue and be sued, it does not dictate that the UNMBOR is the exclusive party against which suits relating to the University of New Mexico must be brought. Doc. 14 at 6-9. Plaintiff argues that it is poor policy to insulate UNMSOL from lawsuits, and that the Tenth Circuit's decision in *McGuinness v. University of New Mexico School of Medicine*, 170 F.3d 974 (10th Cir. 1998), allowed a suit against the University of New Mexico School of Medicine rather than the Board of Regents. *Id.* at 8.

---

[2] No Defendant asserts, and so the Court does not address, the defense of qualified immunity.

Plaintiff's argument has it backwards. There must be a statute creating the school of law as a legal entity capable of being sued, not the other way around (that it is Defendants' burden to show that there is a statute explicitly stating the law school cannot be sued). "The law of the state in which the district court sits governs the capacity of a governmental entity to sue or to be sued." *White v. Utah*, 5 F. App'x 852, 853 (10th Cir. 2001)[3] (citing Fed. R. Civ. P. 17(b)). A governmental entity does not exist except to the extent created by state statute. *E.g.*, *Einer v. Rivera*, 2015-NMCA-045, ¶ 8, 346 P.3d 1197, 1200 ("A county is a subdivision of the state. It possesses only such powers as are expressly granted to it by the Legislature, together with those necessarily implied to implement those express powers." (citation and internal quotation marks omitted)); *Swinney v. Deming Bd. of Educ.*, 1994-NMSC-039, ¶ 8, 873 P.2d 238, 240 ("Local school boards are creations of our legislature. . . . A school district has only such power and authority as is granted by the legislature . . . ."); *McWhorter v. Bd. of Ed. of Tatum Indep. Sch. Dist. No. 28, Lea Cty.*, 1958-NMSC-015, ¶ 17, 320 P.2d 1025, 1028 ("[S]uit can be brought against a state agency when it has been given corporate powers enabling it to contract, take title and be sued in its own name. Absent such powers, permission of the state must precede such suit.").

In *White v. Utah*, the Tenth Circuit held that in the absence of a statute that "expressly provides that a county may sue or be sued," there is no "authority supporting a direct action against a [government's] subdivisions" and such subdivisions are properly dismissed. 5 F. App'x at 853; *see also Roberts v. Colo. State Bd. of Agric.*, 998 F.2d 824, 827 (10th Cir. 1993) (a Colorado statute creating an entity but without giving it the power to sue or be sued meant the

---

[3] The Court cites unpublished Tenth Circuit cases for their persuasive value. *See* 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value.").

entity was not a proper defendant in federal court); *Martinez v. N. Ariz. Univ.*, 553 F. Supp. 3d 908, 916 (D.N.M. 2021) ("In Arizona, the powers of any agency are defined by the statutes creating it. As this general rule relates to an agency being sued, the statutes creating the entity must provide the agency with the power to sue and be sued." (citation omitted)); *Lundquist v. Univ. of S.D. Sanford Sch. of Med.*, 705 F.3d 378, 380 (8th Cir. 2013) ("The legislature by statute created the University of South Dakota, and later its School of Medicine. However, the University was not given the power to sue and be sued. Rather, the statutes created a nine-member Board of Regents that was explicitly granted power to sue and be sued, and placed the University under the control of the Board of Regents. Thus, the district court held that it is the Board of Regents, not the University or its School of Medicine, that has the personal capacity to sue and be sued under South Dakota law. We agree." (citations and internal quotation marks omitted)).

The statute creating the University of New Mexico school of law conspicuously lacks a "sue or be sued" provision, or a grant of any other powers that could be implied to create a suable entity. NMSA § 21-7-8 ("The university shall have departments, which shall be opened at such times as the board of regents deem best, for instruction in science, literature and the arts, law, medicine, engineering and such other departments and studies as the board of regents may, from time to time, decide upon, including military training and tactics.").

Additionally, Plaintiff's reliance on the School of Medicine case is misplaced, because the Tenth Circuit's opinion simply does not discuss whether UNM's departments are themselves suable entities. It therefore does not stand for anything on this question. *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 144 (2011) ("When a potential jurisdictional defect is neither noted nor discussed in a federal decision, the decision does not stand for the proposition

that no defect existed."). Finally, Plaintiff's arguments that it is unwise or unfair to prohibit the school of law from being sued are better addressed to the state legislature, not this Court.

The Court therefore dismisses Defendant UNMSOL from this lawsuit.

## II.     Redundancy of Official Capacity Suits Against UNMBOR and Dean Pareja

Defendants also observe that official capacity suits against both Dean Pareja and the UNMBOR are redundant. Doc. 12 at 6 n.1. Because the true defendant in an official capacity suit is the entity for which the individual defendant acts as an agent, a suit against the UNMBOR in its official capacity is a suit against the Board of Regents itself, as an entity, and a suit against Dean Pareja in his official capacity is equivalent to a suit against the university that employs him. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Klaassen v. Atkinson*, 348 F. Supp. 3d 1106, 1159 (D. Kan. 2018) (official-capacity suit against dean of school of medicine was equivalent to suit against university for res judicata purposes). Since a suit against the university is properly one against the UNMBOR, these two official capacity suits are against the same entity and are therefore redundant. Accordingly, the Court dismisses Dean Pareja in his official capacity from the lawsuit.

## III.    New Mexico Civil Rights Act (Count VI)

Defendants seek to dismiss Count VI because the New Mexico Civil Rights Act, NMSA § 41-4A-1 *et seq.*, only took effect on July 1, 2021 and does not have retroactive effect. Doc. 12 at 24-25. The dates given in the complaint range from August 2017 to August 2019, when Plaintiff received an offer to return to school but rejected it. *See* Doc. 11 ¶¶ 9-10, 72.

The Civil Rights Act states: "Claims arising solely from acts or omissions that occurred prior to July 1, 2021 may not be brought pursuant to the New Mexico Civil Rights Act." NMSA § 41-4A-12. The plain text of the Civil Rights Act thus bars the claims in this case because they

are based on acts and omissions that took place from August 2017 to August 2019. Compl. ¶¶ 9-73. Plaintiff concedes that there is no "retroactive application of th[e Civil Rights Act] for individual acts and omissions occurring prior to July 1, 2021." Doc. 14 at 22.

Nonetheless, Plaintiff alleges a theory of "current and ongoing harms" because UNMSOL and the UNMBOR have failed to remedy the problems she faced while she was a student, even though she is no longer a student there, and they have not reimbursed her for her tuition, so she continues to suffer harm after July 1, 2021. Doc. 14 at 23. Plaintiff cites no authority for her novel interpretation that an explicitly prospective Act can retroactively reach conduct if harm to the plaintiff is "continuing." Plaintiff does not dispute that the "acts" and "omissions" at issue in this lawsuit occurred prior to July 1, 2021. The Court therefore GRANTS Defendants' Motion regarding this claim and dismisses Count VI in its entirety.

## IV.    Sovereign Immunity from New Mexico Constitutional Claims

Defendants argue that Plaintiff's claims relying on the New Mexico constitution (Counts III, part of Count IV, and to some extent Count V) may not proceed because sovereign immunity shields Defendants from liability. Doc. 12 at 21-24. Plaintiff responds that the New Mexico Tort Claims Act ("TCA") waives sovereign immunity for violations of the New Mexico constitution by law enforcement officers and that the dean of the law school, vested with the power to maintain order within the law school, should qualify as a law enforcement officer. Doc. 14 at 17-19.

Defendants argue, and Plaintiff does not dispute, that the TCA grants immunity from tort liability to state governmental entities and public employees acting within the scope of their employment duties, and therefore covers the defendants in this case. Doc. 12 at 22; *see also* Doc. 14 at 17 (not disputing that the TCA applies, but arguing that the TCA waives immunity under

the circumstances of this case). The TCA provides a set of limited waivers for certain acts of wrongdoing by public entities and officials acting within the scope of their duties. NMSA § 41-4-4. One such waiver of sovereign immunity is for certain torts or constitutional violations by law enforcement officers. *Id.* § 41-4-12. This waiver includes the language,

> For purposes of this section, "law enforcement officer" means a public officer or employee vested by law with the power to maintain order, to make arrests for crime or to detain persons suspected of or convicted of committing a crime, whether that duty extends to all crimes or is limited to specific crimes.

*Id.* Plaintiff and Defendants agree that the dean of a law school is a public employee, but they disagree about whether he is a law enforcement officer under the TCA. Doc. 12 at 22; Doc. 14 at 18; Doc. 15 at 10-11.

Serving as the dean of a law school does not qualify a person as a "law enforcement officer" under New Mexico law. While the dean of a law school has the power to maintain order within the law school, that is not maintaining "public" order and has nothing to do with community policing. The reference to "maintain[ing] public order" is accompanied by references to policing persons "suspected of or convicted of committing a crime" which is simply inapt for the dean of a law school. Courts have rejected other expansive interpretations of this language. *See Coyazo v. State*, 1995-NMCA-056, ¶ 12, 897 P.2d 234, 236 (district attorney in prosecutorial role is not "law enforcement officer"); *Fernandez v. Mora-San Miguel Elec. Co-op, Inc.*, 462 F.3d 1244, 1251-52 (10th Cir. 2006) (chief investigator of district attorney's office is not "law enforcement officer"). The dean of a law school is no exception.

Plaintiff argues that "[p]ublic schools are routinely sued for denial of equal protection claims under both federal and state law" and argues that she intended to bring "direct New

Mexico Constitutional claims." Doc. 14 at 19.[4] This logic may be true for federal claims due to the Fourteenth Amendment of the U.S. Constitution. *See Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976).[5] Under the state constitution, however, equal protection claims are more limited. Before the passage of the New Mexico Civil Rights Act (discussed *infra*), "direct constitutional claims" simply did not exist independently of the TCA. "In the absence of affirmative legislation, the courts of this state have consistently declined to permit individuals to bring private lawsuits to enforce rights guaranteed by the New Mexico constitution, based on the absence of an express waiver of immunity under the Tort Claims Act." *Barreras v. N.M. Corr. Dep't*, 2003-NMCA-027, ¶ 24, 62 P.3d 770.

Plaintiff bears the burden of demonstrating that sovereign immunity has been waived. *See Sydnes v. United States*, 523 F.3d 1179, 1183 (10th Cir. 2008) (party asserting jurisdiction bears burden). Because she has not done so, the Court GRANTS Defendants' Motion to Dismiss regarding Count III in its entirety and Counts IV and V as they pertain to the New Mexico constitution.

---

[4] In cursory fashion, Plaintiff in her response requests leave to file an amended complaint in the event the Court dismisses her claims. Doc. 14 at 19. Plaintiff, however, did not file a separate motion to amend, and does not explain how an amendment would fix the issues identified in this opinion. The Court, therefore, does not view the request in Plaintiff's response as a motion to amend. *See Glenn v. First National Bank in Grand Junction*, 868 F.2d 368, 370 (10th Cir. 1989) (finding a plaintiff's request for leave to amend contained in response to motion to dismiss did not state with particularity the grounds for the request as required by Federal Rule of Civil Procedure 7(b), was a "mere 'shot in the dark'" and did not constitute a motion for leave to amend)*; see also Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1283 (10th Cir. 2021) (citing *Glenn* approvingly for this holding).

[5] Notably, Plaintiff cites only federal law as support for her argument. Doc. 14 at 19.

## V.     Title IX Claim

### A.  Individual Capacity Claims Against UNMBOR and Dean Pareja

Defendants move to dismiss Count I of the complaint against the UNMBOR and Dean

Pareja in their individual capacities, arguing that Title IX is enforceable only against institutions,

not individuals. Doc. 12 at 4-5. Defendants rely on *Fitzgerald v. Barnstable School Committee*,

which notes that "Title IX reaches institutions and programs that receive federal funds, 20 U.S.C.

§ 1681(a), which may include nonpublic institutions, § 1681(c), but it has consistently been

interpreted as not authorizing suit against school officials, teachers, and other individuals." 555

U.S. 246, 257 (2009); *accord Cox v. Sugg*, 484 F.3d 1062, 1066 (8th Cir. 2007); *Williams v. Bd.*

*of Regents of Univ. Sys. of Georgia*, 477 F.3d 1282, 1300 (11th Cir. 2007); *Smith v. Metro. Sch.*

*Dist. Perry Twp.*, 128 F.3d 1014, 1019-20 (7th Cir. 1997); *Bose v. Bea*, 947 F.3d 983, 989 (6th

Cir. 2020). This reasoning is consistent with the text of Title IX itself, which states: "No person

in the United States shall, on the basis of sex, be excluded from participation in, be denied the

benefits of, or be subjected to discrimination under any education program or activity receiving

Federal financial assistance." 20 U.S.C. § 1681(a). It would be counterintuitive to classify a

person in his or her individual capacity as a "program" or "activity." Nor does the complaint

allege that these defendants receive federal financial assistance in their individual capacities.

Plaintiff cites no authority supporting a Title IX claim against an individual. Instead,

Plaintiff argues that Count I is not subject to dismissal because "Title IX claims may be brought

in addition to, and concurrent with, 42 U.S.C. §1983" and because "the text of 42 U.S.C. §1983

specifically requires individuals, not just institutions, to be named." Doc. 14 at 9. Plaintiff's

argument misses the point. That Title IX and Section 1983 cases can be brought in the same

lawsuit says nothing about whether Title IX allows lawsuits against individuals. This portion of

Defendants' motion to dismiss is directed at Count I. Count I is clearly labeled a "Title IX" claim and nowhere references Section 1983 or even alleges any constitutional violations. Doc. 11 ¶¶ 74-84. Because this count of the complaint clearly purports to bring Title IX claims—not Section 1983 claims—against individual defendants, it is subject to dismissal as such.

Therefore, the Court GRANTS the Motion as it pertains to Plaintiff's Title IX claims against Defendants UNMBOR and Dean Pareja in their individual capacities.

## B.  Failure to State a Claim Against the Educational Institution

Defendants move to dismiss the Title IX claim in Count I brought against the educational institution (for simplicity, referred to in this section as "UNM"). "A school recipient of federal funds may be liable under Title IX for its own conduct in being deliberately indifferent to student-on-student sexual harassment." *Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist.*, 511 F.3d 1114, 1119 (10th Cir. 2008). "A school district may be liable under Title IX provided it (1) has actual knowledge of, and (2) is deliberately indifferent to, (3) harassment that is so severe, pervasive and objectively offensive as to (4) deprive access to the educational benefits or opportunities provided by the school." *Id.* (citation omitted).

Defendants argue that Plaintiff fails to allege facts sufficient to plausibly establish the first three elements. Doc. 12 at 8-10 (arguing no actual knowledge of harassment under element one and that harassment alleged is not severe, pervasive and objectively offensive under element three); *id.* 10-11 (arguing no deliberate indifference given their response described in Plaintiff's complaint under element two). Finally, they also argue that Plaintiff fails to demonstrate that any wrongdoing by Defendants was motivated by Plaintiff's gender. *Id.* at 11-12. Plaintiff responds that her claim is facially plausible and that Strandberg serves as a "direct comparator of the opposite sex." Doc. 14 at 11, 15. She also argues that UNM had actual knowledge of the

instances of harassment. *Id.* at 13-14. The Court addresses Defendants' arguments in the same order Defendants raised them.

      *1. Actual Knowledge of Severe and Pervasive Harassment*

Defendant argues that "Plaintiff has alleged three events which occurred on campus and of which she alerted Defendants" (the August 2017 "I love you" incident; the September 2017 violation of the protective order in the law school's forum; and the April 2018 parking lot incident), and then proceeds to analyze whether these three lone events constituted severe, pervasive and objectively offensive harassment. Doc. 12 at 9. But the Tenth Circuit has rejected the notion that off-campus harassment is irrelevant when the educational institution is aware of it. Although UNM is not liable for harassment that occurs outside its control, it is liable for its own behavior based on actual knowledge of past events that occurred off campus. *See Doe v. School District No. 1, Denver, Colorado*, 970 F.3d 1300, 1305 (10th Cir. 2020) (allegation of off-campus sexual assault, other off-campus harassment that occurred over the summer, and harassment that occurred on social media relevant when school had knowledge of these allegations); *Ross v. Univ. of Tulsa*, 859 F.3d 1280, 1288 (10th Cir. 2017) (discussing, as a factor relevant to Title IX liability, the university's knowledge that "the presence of a rapist on the university campus would pose a substantial risk to others").

Given Tenth Circuit precedent, rather than focusing on where the harassment occurred, the Court focuses on whether UNM had knowledge of the alleged harassment. Plaintiff's specific allegations are that, at the beginning of the school year (on or before August 14, 2017), she provided UNM and its Associate Director of Student Affairs Nancy Huffstutler a copy of the Order of Protection (Doc. 11 ¶¶ 9, 10) and informed her of Strandberg's history of violence and that he had a weapon (¶ 13). But Plaintiff provides little detail related to many of the

notifications of subsequent alleged harassment. The Court considers each of Plaintiff's allegations in turn to determine whether she plausibly alleged that she provided UNM notification of Strandberg's alleged conduct.[6]

The first instance of alleged harassment came on August 22, 2017, when Strandberg came within 25 yards of Plaintiff and told her in American Sign Language, "I love you." Here, Plaintiff does specifically allege that she told UNM, through Huffstutler, of this incident. Doc. 11 at ¶¶ 14, 15. Less than three weeks later, on September 9, Strandberg allegedly followed Plaintiff in a common area at the law school. Although Plaintiff does not say to whom she reported this incident, she does allege that she reported it to UNM (¶¶ 17, 18). Similarly, Plaintiff claims she notified "Defendants" of Strandberg's October 4, 2017 email to her and of his text to their child (¶¶ 19, 20).

Although Plaintiff asserts that Defendants took no action when Strandberg again texted their child on November 24 (¶¶ 21, 22), she does not specifically allege that she notified UNM of this incident. The same is true for Plaintiff's allegation that Strandberg again emailed her on December 1; that he was in UNM's Student Health and Counseling Center's waiting room when she came out of an appointment on December 8; and that on December 11 he walked into the law school's dining area when she was already there (¶¶ 23, 24, 27, 29-32). Finally, the next and last specific instance of alleged harassment Plaintiff describes occurred on April 9, 2018, when Defendant allegedly walked alongside her moving vehicle in the law school's parking lot and angrily mouthed some undefined words at her (¶ 37). Here, Plaintiff resumes making specific allegations of notice: she alleges that on April 11 she told Huffstutler of the incident (¶¶ 39-41).

---

[6] Plaintiff makes no allegation that UNM would obtain actual knowledge through any other means.

However, Plaintiff generally alleges "[t]he violations continued throughout the entirety of the school year with Defendants responding by taking no action to protect Plaintiff Tucker" (¶ 32) and that "[t]hroughout her entire ordeal, Plaintiff Tucker exchanged personal correspondence with Defendant Dean Pareja, detailing certain alleged violations and Defendant UNMSOL's reaction and lack of action to Plaintiff's concerns" (¶ 69). Thus, although Plaintiff indicates she notified Dean Pareja of "certain allegations," she does not identify which allegations. Nevertheless, Plaintiff goes on to allege that "Defendant Dean Pareja has and had actual knowledge of the sexual harassment, stalking, violence, and multiple violations of an Order of Protection committed by Strandberg, leading to Plaintiff's denial of publicly funded and supported educational benefits and opportunities" (¶ 81). The Court must read this allegation in the light most favorable to Plaintiff and accept it as true.

Thus, although Plaintiff only provides the exact details of how she reported the harassment she alleges for a few of the instances of alleged harassment, reading her complaint in the light most favorable to her, she does claim that the dean of the law school knew about each of them. Plaintiff's complaint, therefore, is not defective by virtue of generally attributing an action to all Defendants instead of identifying the specific actor. Even in the wake of *Iqbal* and *Twombly*, "[t]he complaint need not provide details of the time, place, offender, and precise statement for every incident." *Doe v. School District No. 1, Denver, Colorado*, 970 F.3d 1300, 1312 (10th Cir. 2020) (addressing pleading standard in Title IX sexual harassment case). Correspondingly, applying this same reasoning to notifications about incidents of harassment, the complaint need not provide details of the time, place, appropriate person notified, and precise contents of notification for every instance of notification.

This is especially true where a defendant is not contesting whether notification was made to appropriate persons. *Cf. Ross v. Univ. of Tulsa*, 859 F.3d 1280, 1288-89 (10th Cir. 2017) ("To trigger Title IX liability, a university must have actual notice through an appropriate person. An appropriate person is, at a minimum, an official of the university with authority to take corrective action on behalf of the university to end the discrimination." (internal quotation marks, citations, and alterations omitted)). When a defendant is not contesting that the notifications alleged were made to the appropriate person, as is the case here, alleging to whom every notification was made (Plaintiff did identify to whom she made some notifications) becomes less important.[7]

In sum, at this stage, the Court must take Plaintiff's general allegations as true. Plaintiff alleges that Strandberg's behavior continued all year, that Plaintiff put the school on notice of this behavior, and that Dean Pareja had actual knowledge of her harassment allegations and how it was affecting her academic performance. Plaintiff's allegations contain enough detail to provide Defendants fair notice of her claims (about providing notice of the harassment) such that Defendants can defend against them. *See Warnick v. Cooley*, 895 F.3d 746, 751 (10th Cir. 2018) (complaint must give fair notice of claims and grounds upon which they rest (citing *Twombly*, 550 U.S. at 555)).

As the Court earlier discussed, Plaintiff also notified UNM of the contents of the protection order and of Strandberg's "documented mental illness and substance abuse, repeated past violence, and that he possessed a weapon." Doc. 11 at 3 ¶ 13. It is plausible that a jury could conclude from this that UNM knew Strandberg was on campus and potentially presented a threat

---

[7] Although, as set forth above, Plaintiff alleges "Defendant Dean Pareja has and had actual knowledge of the sexual harassment, stalking, violence, and multiple violations of an Order of Protection committed by Strandberg," she does not allege whether, for each allegation, he gained that actual knowledge directly from her or from someone else at the law school whom she directly notified.

to another person on campus. Plaintiff therefore plausibly alleges that UNM had actual

knowledge of a substantial risk to her that existed *on UNM's campus*, regardless of whether the

factors and behavior originally creating that risk occurred on campus or off. Further, Plaintiff

provides sufficient information about notifying UNM of incidents she describes as harassing and

that occurred after she enrolled in the law school to state a claim that UNM had actual

knowledge of this conduct.

Notice of conduct a plaintiff describes as sexually harassing, however, is not enough by

itself. The sexual harassment at issue must have been so severe, pervasive and objectively

offensive that it deprived Plaintiff of an equal educational opportunity. In *Doe v. School District

No. 1, Denver, Colorado*, the Tenth Circuit provides guidance as to what type of conduct

qualifies as severe, pervasive and objectively offensive. 970 F.3d 1300 (10th Cir. 2020). There,

the Tenth Circuit reversed the grant of a motion to dismiss the complaint in a Title IX case that

bears similarities to the case at bar. Jane Doe was a 14-year-old student in her first year at East

High School ("EHS") when she was sexually assaulted by a male classmate, referred to as

"Student 1," at his parents' home on a Saturday evening in March. *Id.* at 1305. Doe reported the

assault to an EHS dean. *Id.* Doe then experienced retaliation and bullying from other students at

the school who had heard about the assault, and she told the EHS dean about this conduct. *Id.*

The peer harassment and bullying continued until the school year ended, and there was one

instance of harassment over the summer. *Id.* at 1305-06.

When school was back in session in the fall, the school received additional reports that

Doe was being bullied as a result of the rape and that she had ongoing conflicts with other

students. *Id.* at 1306. In December, Doe told the school that things had gotten worse for her and

that she was considering switching schools. *Id.* In January, Doe reported through an app that she

was being bullied and met with the school to explain the other students were making drawings of her, telling her to kill herself, calling her names, starting rumors about her, and making rape jokes about Student 1 to her. *Id.* She gave the school copies of numerous pictures and social media exchanges as well as the names and phone numbers of the students who were harassing her. *Id.* The harassment continued into April, when Doe and her parents arranged a different schedule with the school in an effort to allow her to avoid her harassers. *Id.* at 1306-07. Doe then transferred schools. *Id.* at 1304.

The district court granted the motion to dismiss because it determined that the complaint failed to plausibly allege, among other things, that the harassment was severe and pervasive. *Id.* at 1308. The district court offered two reasons: first, that most of the allegations in the complaint were too conclusory, and second, that the "specific instances" described in the complaint were too few to support a finding of severe and pervasive harassment. *Id.* at 1311-12. The Tenth Circuit disagreed on both fronts, noting that "Ms. Doe's complaint alleges that she was subjected to harassment by her peers more or less continuously from the time she reported Student 1 until she stopped attending regularly scheduled classes more than a year later." *Id.* at 1311. The court continued,

> The complaint need not provide details of the time, place, offender, and precise statement for every incident. Describing more than half a dozen of the types of things said to her, apparently repeatedly, can suffice, particularly when combined with her allegations that she reported ongoing and continuous harassment to school personnel almost monthly from the time of the sexual assault to the time she left the school.

*Id.* at 1312.

The allegations in *Doe* were more severe, pervasive and objectively offensive than in the present case. The Plaintiff in *Doe* alleged specific acts of harassment that continued without any significant period of interruption. *Id.* at 1311. Based on these specific factual allegations, the

Tenth Circuit determined that the "complaint alleges that she was subjected to harassment by her peers more or less continuously from the time she reported Student 1 until she stopped attending regularly scheduled classes more than a year later." *Id*. In contrast, although Plaintiff generally alleges a continuous period of harassment, she cites no specific examples of harassment between December 2017 and April 2018.

Further, the *Doe* plaintiff, a 14-year-old at the time the harassment began, alleged more severe harassment. After having been sexually assaulted, she claims

> she was called a "dirty slut," blackmailed with nude photographs; told that "[c]onsent is a myth," and that she would be the first to lose her virginity; and threatened with physical violence. She also alleges that a group of boys would start rumors about her, make rape jokes about her assailant to her, pull on her backpack, tell her to kill herself, and draw pictures of her killing herself.

*Id*. The Tenth Circuit also noted that the harassment was so severe that "two teachers and one counselor were sufficiently concerned to contact school administrators for their help." *Id*. at 1312. Thus, the allegations in *Doe* were that, besides the original harasser, numerous other students engaged in an unrelenting campaign of harassment with impunity that reflected the culture of the school.

In contrast, Plaintiff asserts that the law school should have done more to prevent her ex-husband (who was already a third-year law school student when Plaintiff enrolled) from (all in violation of a court order) being within 50 yards of her, telling her "I love you," following her, texting their child, and walking alongside her car while angrily mouthing some words. Although harassment of any kind is concerning, compared to the allegations in *Doe*, Plaintiff's allegations are not as severe, pervasive and objectively offensive.

Nonetheless, relying on the same standards articulated in *Doe*, the Court concludes that Plaintiff does clear the bar set at the motion-to-dismiss stage. Certainly, a "plaintiff should

have—and must plead—at least some relevant information to make the claims plausible on their face." *Id.* at 1311 (quoting *Bekkem v. Wilkie*, 915 F.3d 1258, 1275 (10th Cir. 2019)). But "the plaintiff is not required to prove her case at the motion-to-dismiss stage." *Id.* (citing *Bekkem*, 915 F.3d at 1275 ("A complaint raising a claim of discrimination does not need to conclusively establish a prima facie case of discrimination.")). Most crucially, severity and pervasiveness are "matters of degree . . . often best left to the jury. Thus, we have observed that the severity and pervasiveness evaluation is particularly unsuited for summary judgment because it is quintessentially a question of fact, and it is even less suited for dismissal on the pleadings." *Id.* at 1311-12 (internal quotation marks and citation omitted).

Here, although a former spouse's "I love you" comment may not be harassing in every context, this comment must be viewed together with the fact that it was made not long after Plaintiff had obtained a protection order against her ex-husband. In doing so, Plaintiff went through great lengths to communicate to him that their relationship was over and that any future communications of any sort would be unwelcome and viewed as threatening. In this context, the words "I love you" convey that, despite a protection order, the same ex-husband who allegedly violently abused Plaintiff was still emotionally attached to her and was refusing to let go of the relationship. A jury could conclude that, rather than considering it a benign or affectionate comment, UNM should have viewed Strandberg's "I love you" as a warning that Strandberg's persistent emotional connection to Plaintiff would lead to continued unwanted advances or other harassment.

The next alleged incident, occurring less than three weeks later, involved Strandberg following Plaintiff in the common area at the law school. Plaintiff's allegation that another student felt compelled to intervene could lead a jury to conclude that this following was more

akin to stalking behavior than a chance encounter in which two people happened to be traveling in the same direction at the same time. *See Doe*, 970 F.3d at 1312 (recognizing importance of evaluation of third parties on severity assessment).

Plaintiff alleges that Strandberg thereafter sent text messages to his child. The complaint again does not provide any detail about what these text messages said. But the complaint does allege that this contact was in violation of the court's order of protection (¶ 21). Similarly, Plaintiff does not describe the content of the emails Strandberg sent to her (one of which was on a UNM account). Nonetheless, it is plausible that a jury could conclude that UNM, aware of Strandberg's history, should have seen Strandberg's attempt to communicate with his ex-wife and child, in violation of a court order and despite her expressed desire for him to leave them alone, as an indication of Strandberg's resolve to continue harassing his ex-wife.

Plaintiff's next two allegations—that Strandberg walked into a room Plaintiff was already in on one occasion and, on another, was present in the waiting room when Plaintiff walked out of a counseling appointment—could simply describe chance encounters. At this stage, however, all facts must be viewed in the light most favorable to Plaintiff and it is plausible that a reasonable jury could conclude that, rather than being random, these encounters added to a pattern of harassing, stalking behavior that UNM should have recognized.

Finally, Plaintiff alleges that on April 9 Strandberg walked alongside her moving car while angrily mouthing some unidentified words. This is a serious allegation. It appears from the complaint that UNM suspended Strandberg eight days after Plaintiff informed UNM of the parking lot incident on April 11. Doc. 11 ¶¶ 39, 48. Plaintiff, however, attributes this disciplinary action to an April 19 battery Strandberg that committed against another student and for which he was arrested. In these circumstances, it is plausible that a reasonable jury would conclude that

the series of incidents that began not long after Plaintiff enrolled at UNM, and that culminated in the incident on April 9, was met with no response from UNM and that this failure to respond demonstrated deliberate indifference that deprived Plaintiff of an equal educational opportunity.

Pertinent too is the Tenth Circuit's observation that "[a]dding to the evidence that the harassment was severe and pervasive are the allegations regarding the impact of the harassment on Ms. Doe." *Doe*, 970 F.3d at 1312. Doe alleged that by the spring semester of her sophomore year, she was going to great lengths to structure her time at EHS to avoid contact with the students who were harassing her. *Id.* The facts are comparable here: Plaintiff alleges that the harassing behavior interfered with her performance on exams, resulted in her failing a class, and eventually led to her academic suspension. Doc. 11 ¶¶ 20, 33, 58-59.

Ultimately, although in the aggregate Plaintiff's allegations about Strandberg are less severe than the allegations that led the Tenth Circuit to reverse the district court's dismissal in *Doe*, the Court is mindful of the Tenth Circuit's admonition that "matters of degree—such as severity and pervasiveness—are often best left to the jury . . . particularly unsuited for summary judgment . . . and . . . even less suited for dismissal on the pleadings." 970 F.3d at 1311-12. Plaintiff alleges that she informed UNM at the beginning of the school year that Strandberg posed a danger to her, and why. She alleges that he began to harass her on campus, and she reported that to UNM. She alleges that he sent her and her minor child communications in violation of a court order. She alleges that this occurred at the same time she was taking exams and that it interfered with her performance. She alleges that UNM knew this harassment was interfering with her academic performance. She alleges that this harassment continued the entire school year and that UNM responded by doing nothing against Strandberg, instead suspending her for her academic performance. Plaintiff's allegations plausibly allege sexual harassment so

severe and pervasive that, by failing to act, UNM deprived Plaintiff of an equal educational opportunity.

### 2. Failure to Respond

Defendants argue that according to the complaint, they *did* take action in response to Plaintiff's reports of harassment: they offered her the options of quitting school, withdrawing, or taking a leave of absence. Doc. 12 at 10. They argue that this array of options was reasonable because Plaintiff was starting her first year of school and Strandberg was finishing his third and final year of school, so if Plaintiff had waited, she could have avoided interacting with him because he would no longer be on campus. *Id.*

Defendants correctly note that a school is deliberately indifferent if its "response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Davis ex rel. LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 648 (1999); Doc. 12 at 10. Certainly, suggesting or approving a leave of absence can be a reasonable supportive measure for an alleged victim or a perpetrator of harassment. 34 C.F.R. § 106.30 (definition of "supportive measures"). But the Tenth Circuit has explained that "it is not enough to try to help a student cope with the misbehavior of other students." *Doe*, 970 F.3d at 1313. "Deliberate indifference may be shown by a failure to act to halt the misbehavior." *Id.* at 1314. Offering to allow Plaintiff to put law school on hold for a year did nothing to address the root behavioral issues Plaintiff alleges. Although Defendants are correct that the complaint alleges that UNM tried to help Plaintiff cope with Strandberg's misbehavior, it also alleges that UNM failed to act to halt the misbehavior. Therefore, following *Doe*, the Court finds that Plaintiff's complaint states a claim under the deliberate indifference prong.

### 3. On the Basis of Plaintiff's Gender

Defendants argue that the complaint fails to allege any wrongful conduct by them that was the result of gender discrimination or bias, and that the allegations in the complaint to that effect are conclusory. Doc. 12 at 11. Plaintiff responds that Strandberg was treated more favorably than she was; where she faced suspension proceedings, Strandberg did not face any type of academic or disciplinary proceedings until after he was arrested for assaulting a different student. Doc. 14 at 11, 14.

Both parties appear to conflate two different Title IX theories: deliberate indifference to student-on-student harassment (for example in *Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist.*, 511 F.3d 1114 (10th Cir. 2008)), and an action based on defendants' own "selective enforcement" discipline (for example in *Doe v. Univ. of Denver*, 1 F.4th 822, 829-30 (10th Cir. 2021)). In the case of student-on-student harassment, case law has not required a direct comparator. *See, e.g., Ross v. Univ. of Tulsa*, 859 F.3d 1280, 1283 (10th Cir. 2017) (listing elements of student-on-student harassment claim: actual notice of likelihood that a student would sexually harass another student; deliberate indifference to risk; harassment is severe, pervasive, and objectively offensive; and harassment deprived victim of educational opportunities). For "selective enforcement" discipline, *i.e.*, that a student faced discipline based on her gender that a similarly situated student of another gender did not face, a comparator is necessary. *Univ. of Denver*, 1 F.4th at 830.

Count I of Plaintiff's complaint relies on a theory of deliberate indifference to student-on-student harassment. Doc. 11 ¶¶ 78, 81-83. Therefore, for her student-on-student harassment theory, Plaintiff does not need to identify a comparator *or* to allege that Defendants' own conduct was motivated because of her gender. Allegations that Defendants were deliberately indifferent (whatever their motivations) to sexual harassment are sufficient to state a claim.

Therefore, Defendants' argument that the complaint does not allege facts showing that *Defendants* were motivated by gender-based animus is not well taken.

In passing, Defendants cite one case with a parenthetical that could be interpreted as raising the argument that the student-on-student harassment alleged in this case was itself not sex- or gender-based. Doc. 12 at 9-10 (citing *Seamons v. Snow*, 84 F.3d 1226, 1233 (10th Cir. 1996), and characterizing it as "rejecting hostile environment claim because there were no facts alleged suggesting the conduct of the other students harassing the plaintiff was 'sexual in nature' as there were no allegations that 'he was subjected to unwelcome sexual advances or requests for sexual favors, or that sex was used to contribute to a hostile environment for him'"). *Doe* prevents Defendants from using *Seamons* to gain any traction. As *Doe* noted, *Seamons* involved a claim that the defendants retaliated against the plaintiff for his reporting of harassment. *See Doe*, 970 F.3d at 1310. *Doe* observed that the plaintiff in *Seamons* did not challenge the underlying harassing incident and "did not allege any sexual content in the [school's] response other than the general nonspecific conclusion that the [school] might have handled a female athlete's complaint differently." Unlike the plaintiff in *Seamons*, Plaintiff's principal Title IX claim is that Defendants were deliberately indifferent to harassment about which they had actual knowledge, not that Defendants retaliated against her for reporting such harassment.

More importantly, *Doe* explained that "after *Seamons* was decided, the Supreme Court held, directly contrary to what the [defendant] reads into *Seamons*, that retaliation for reporting sex discrimination comes within the meaning of the statutory language prohibiting discrimination 'on the basis of sex.'" 970 F.3d at 1310. "An allegation that the plaintiff was harassed for reporting misconduct can therefore suffice to state a claim for discrimination on the basis of sex if the misconduct reported is itself sex discrimination." *Id.* As applied to a case like

*Doe* and this present case, "the sexual assault that [the plaintiff] complained about was an act of sex discrimination." *Id.* at 1311. "Thus, we can only conclude that [the plaintiff]'s complaint adequately alleges that her harassment by other students was on the basis of sex." *Id.*

So too here. The conduct Plaintiff complains of is sexual in nature. She claims that a student with whom she had a sexual relationship would not accept the end of their relationship and so stalked and harassed her during her first year of law school. Plaintiff's claim is premised on the idea that Strandberg stalked and harassed her because he would not accept that his sexual relationship with her was over, and UNM was deliberately indifferent to this stalking and harassment. Thus, the Court rejects Defendants' argument that Plaintiff's claim fails because the harassment about which she claims was not sexual in nature. Because the Court rejects Defendants' argument, the Court need not consider Plaintiff's argument that gender animus can be inferred because she faced suspension from school, while Strandberg did not (until he was later suspended for conduct with a different student).

## VI.    Section 1983 Claims

### A.    Official Capacity Claims

Defendants argue that Section 1983 permits suits only against a "person" acting under color of state law, not a state agency or entity, and that the official capacity claim against UNMBOR is therefore impermissible as a suit against the Board of Regents itself. Doc. 12 at 13-15. Plaintiff responds that Dean Pareja violated Plaintiff's rights in both his individual capacity—by ignoring her communications—and official capacity—by denying her First Petition for relief from academic suspension. Doc. 14 at 16.

Plaintiff's interpretation misses the mark. 42 U.S.C. § 1983 allows an individual to sue when a person acting under color of state law deprives her of her constitutional rights. *West v.*

*Atkins*, 487 U.S. 42, 48 (1988). A Section 1983 plaintiff may sue a defendant in his personal capacity—that is, "to impose personal liability upon a government official for actions he takes under color of state law," *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)—or in his official capacity. An official-capacity suit is, "in all respects other than name, to be treated as a suit against the entity" for which the individual acts as an agent, rather than against the individual himself. *Id.* at 166 (quotation omitted). That is, a suit against the UNMBOR in its official capacity is a suit against the Board of Regents itself, as an entity. Similarly, a suit against Dean Pareja in his official capacity is equivalent to a suit against the university that employs him. *See Klaassen v. Atkinson*, 348 F. Supp. 3d 1106, 1159 (D. Kan. 2018) (official-capacity suit against dean of school of medicine was equivalent to suit against university for res judicata purposes). As described above, this is why the Court dismissed the suit against Dean Pareja in his official capacity as redundant.

The University of New Mexico, its subdivisions, and its Board of Regents are all "arms of the state" that exist as political bodies. *See Buchwald v. Univ. of N.M. Sch. of Med.*, 159 F.3d 487, 494 n.3 (10th Cir. 1998) (University of New Mexico School of Medicine and its regents are "arms of the state"). Section 1983 suits are not valid against "arms of the state." *Howlett by and through Howlett v. Rose*, 496 U.S. 356, 365 (1990) (reiterating that "the State and arms of the State, which have traditionally enjoyed Eleventh Amendment immunity, are not subject to suit under § 1983 in either federal court or state court"); *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613 (2002) (state agencies are not "persons" under section 1983 even when the state waives its Eleventh Amendment immunity by voluntarily appearing in federal court after removing a case from state court); *McLaughlin v. Bd. of Trustees of State Colls. of Colo.*, 215

F.3d 1168, 1172 (10th Cir. 2000) (same). Therefore, a Section 1983 claim cannot be brought against the UNMBOR in its official capacity, and the Court GRANTS the motion to dismiss it.

### B.   Claims Against UNMBOR Members in Their Individual Capacities

Defendants argue that the complaint makes no allegations whatsoever of individual conduct by any member of the UNMBOR and therefore that the claims against the UNMBOR members in their individual capacities should be dismissed. Doc. 12 at 16. Defendants are correct that the complaint does not contain any allegations of conduct by UNMBOR members in their individual capacity. Nor does Plaintiff's response address this question. Generalized allegations against "Defendants" are insufficient. *Robbins v. Okla.*, 519 F.3d 1242, 1250 (10th Cir. 2008) (in Section 1983 cases against a government agency and a number of government actors sued in their individual capacities, "it is particularly important in such circumstances that the complaint make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state"). The Court therefore dismisses the Section 1983 claims against the UNMBOR members in their individual capacities.

### C.   Claims Against Dean Pareja in His Individual Capacity

Defendants argue that the allegations against Dean Pareja in his individual capacity are either too vague (pled against "Defendants"), involve conduct that took place after Plaintiff's suspension, or do not demonstrate a violation of Plaintiff's constitutional rights. Doc. 12 at 17-21.

The Court begins by rejecting Plaintiff's argument that Ms. Huffstutler's conduct may be imputed to Dean Pareja "via principles of *respondeat superior*" to achieve the appropriate specificity. *See* Doc. 14 at 16. Section 1983 does not authorize this type of liability. *See Porro v.*

*Barnes*, 624 F.3d 1322, 1327-28 (10th Cir. 2010). The Court thus examines only the allegations in the complaint pertaining to Dean Pareja's own actions or knowledge.

Plaintiff alleges that she appealed her academic suspension to Dean Pareja (¶ 66), he denied her appeal (¶¶ 67-68), he maintained correspondence with her and was informed of "certain alleged violations" but took no action (¶ 69), and that Plaintiff sent a second appeal for relief from suspension to him as well (¶ 70). Plaintiff argues that, by ignoring the issues she raised in her correspondence, Dean Pareja violated her rights in his individual capacity. Doc. 14 at 16.[8] Therefore, the Court rejects Defendants' argument that the complaint contains no allegations pertaining to Dean Pareja's individual conduct or knowledge about conduct that occurred before Plaintiff's suspension. Having concluded that Plaintiff makes allegations against Dean Pareja in his individual capacity, the Court next turns to whether those allegations state a claim for the various constitutional violations Plaintiff asserts.

D.   Failure to State a Claim: Procedural and Substantive Due Process Claims

Regarding Count V, Plaintiff alleges that the decision to suspend her was pretextual. She claims that her choice to speak up about the harassment she faced, not her academic performance, led to her suspension. This action, she continues, violated the procedural and substantive due process protections of the Fourteenth Amendment. Plaintiff does not indicate how her procedural due process rights were violated; the complaint itself asserts that she received notice and an opportunity to be heard (¶¶ 58, 60), which normally suffices for procedural due process. *See M.A.K. Inv. Grp., LLC v. City of Glendale*, 897 F.3d 1303, 1312 (10th Cir. 2018) ("due process requires notice reasonably calculated, under all the circumstances,

---

[8] She also characterizes the denial of her appeal as a violation of her rights in his official capacity, Doc. 14 at 16, an argument which the Court's finding above has already disposed of.

to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections" (internal quotation marks omitted)).

Similarly, Plaintiff does not indicate in her complaint or briefing how her substantive due process rights were violated; her response focuses on procedural due process and discusses substantive due process only in the most general of terms regarding the right to pursue one's education and vocational calling. Doc. 14 at 20-21. Suspension and even expulsion do not necessarily shock the conscience, nor does higher education at a public institution qualify as a fundamental right—the two prongs of substantive due process jurisprudence. *See Caldwell v. Univ. of N.M. Bd. of Regents*, 510 F. Supp. 3d 982, 1058-59 (D.N.M. 2020) (banning a student from a public university campus did not constitute a substantive due process violation).[9] The Court therefore GRANTS the motion to dismiss as to Plaintiff's due process claims in Count V.

E.   Failure to State a Claim: Equal Protection and First Amendment Claims

Defendants further argue that Dean Pareja's alleged actions do not state a claim to relief under Plaintiff's Equal Protection and First Amendment theories. Doc. 12 at 18-19; Doc. 15 at 9. Specifically, Defendants point to only one "allegation of direct conduct on the part of Dean Pareja set forth in paragraph 68 of her pleading (e.g., the denial of her appeal for relief from academic suspension . . . )." Doc. 12 at 18. Defendants argue that "Plaintiff does not demonstrate in her pleading how this single act violated Plaintiff's constitutionally protected rights to equal protection, freedom of speech, procedural due process, and/or substantive due process." *Id.*

---

[9] Defendants also seek to dismiss Count V to the extent it purports to bring claims under the Clery Act. Doc. 12 at 24. The parties agree that the Clery Act does not create a private right of action. *See* Doc. 12 at 24; Doc. 14 at 19. Plaintiff explains that she references the Clery Act "as only an example of what reasonable Procedural Due Process Protection looks like." Doc. 14 at 21. Therefore, there is no need to dismiss based on the Clery Act's lack of a private right of action when Plaintiff does not seek to use it to bring a private right of action.

This is not a correct characterization of Plaintiff's complaint. As described above, it alleges that Dean Pareja had knowledge of Strandberg's harassment and did not take any measures in response. The Tenth Circuit has held that knowledge of sexual harassment and acquiescence in that conduct through failure to reasonably respond can constitute a violation of the Equal Protection Clause through Section 1983. *See Murrell v. Sch. Dist. No. 1, Denver, Colo.*, 186 F.3d 1238, 1250-51 (10th Cir. 1999) ("[The plaintiff] must state facts sufficient to allege defendants actually knew of and acquiesced in [the alleged harasser's] behavior. This is precisely [the plaintiff's] claim—that the principal and the teachers knew about [the] harassment of [the student] and acquiesced in that conduct by refusing to reasonably respond to it." (internal quotation marks and citation omitted)).

Similarly, the complaint alleges that Plaintiff was suspended as retaliation for reporting the violations of the Order of Protection (¶ 102). It alleges that Dean Pareja denied her appeals for relief, knowing that she had made these reports (¶¶ 67, 68, 69). To establish retaliation under the First Amendment, Plaintiff must prove that "(1) she was engaged in constitutionally protected activity, (2) the defendant's actions caused her to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that [protected] activity, and (3) the defendant's actions were substantially motivated as a response to [her] protected conduct." *McBeth v. Himes*, 598 F.3d 708, 717 (10th Cir. 2010) (internal quotation marks omitted, alterations in original). Plaintiff's reports that Strandberg violated the Order of Protection are constitutionally protected speech. *See Tiumalu v. Garden City Cmty. Coll.*, No. 20-2193, 2021 WL 1817844, at *7 (D. Kan. May 6, 2021) (a Title IX complaint is constitutionally protected speech). Plaintiff alleges she put Dean Pareja on notice that she had a protection order against another law student and then further notified him that the other student repeatedly violated that

protection order by repeatedly harassing her. In response, Dean Pareja suspended her from the law school.

Defendants are therefore incorrect that there is only one allegation against Dean Pareja, and that that sole allegation cannot state a claim to constitutional violations.[10] Counts II and IV, as they pertain to the federal constitution, survive against Dean Pareja in his individual capacity.

## CONCLUSION

The Court dismisses all claims against UNMSOL and against Dean Pareja in his official capacity. The Court dismisses Count I (Title IX) as to the UNMBOR members and Dean Pareja in their individual capacities. Count I remains against the UNMBOR in its official capacity.

The Court dismisses Count II (Section 1983, equal protection) against the UNMBOR. Count II remains against Dean Pareja in his individual capacity.

The Court dismisses Count III (NMTCA) in its entirety.

The Court dismisses the state-law claims in Count IV (Section 1983 and NMTCA, free speech). The Court dismisses the federal constitutional claims in Count IV against the UNMBOR. The federal-constitutional claims remain against Dean Pareja in his individual capacity.

The Court dismisses Count V (Section 1983, due process) and Count VI (NMCRA) in their entirety.

**IT IS SO ORDERED.**

UNITED STATES MAGISTRATE JUDGE

---

[10] The Court's analysis is confined to the narrow argument Defendants raise. The Court does not address issues Defendants do not raise, such as qualified immunity.